[Cite as *In re S.P.*, 2014-Ohio-1211.]

STATE OF OHIO )  IN THE COURT OF APPEALS
)ss:  NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

IN RE: S.P.
    L.P.
    E.P.

C.A. No.    27138


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 11-08-0595
                 DN 11-08-0596
                 DN 11-08-0597

DECISION AND JOURNAL ENTRY

Dated: March 26, 2014

---

MOORE, Judge.

**{¶1}** Appellant, Sheila W. ("Grandmother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her three minor grandchildren in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Grandmother is the maternal grandmother of the three minor children at issue in this case: S.P., born February 12, 2005; L.P., born December 11, 2002; and E.P., born March 4, 2006. The children's parents are not parties to this appeal.

**{¶3}** At the time this case began, the children were living in the legal custody of Grandmother because both of their parents were incarcerated. On August 30, 2011, they were removed from Grandmother's home pursuant to Juv.R. 6 because the living conditions in the home were deplorable and Grandmother had not been meeting their basic or special needs. In

addition to excessive clutter and filth in every room, the children were dirty, had lice, and had behavioral problems that were not being addressed. Although Grandmother's own nine-year-old child, N.M., was also removed from her home at that time, N.M. was later placed in the legal custody of her father and is not a party to this appeal.

{¶4} On November 2, 2011, S.P., L.P., and E.P. were adjudicated neglected and dependent children. The goal of the initial case plan was for the children to be reunified with Grandmother, their former legal custodian and a party to the action. Because CSB believed that the cluttered and unclean condition of Grandmother's home and her behavior of "hoarding" her possessions was likely the result of mental health problems, Grandmother was required to obtain a mental health assessment and follow all resulting treatment recommendations. During the first several months of this case, Grandmother made little progress cleaning her home and making it more habitable for the children. Although she engaged in counseling, her counselor became concerned that Grandmother had more serious mental health problems that the counselor was not qualified to diagnose. Consequently, Grandmother was then required to obtain additional evaluations by a licensed psychologist and a psychiatrist, but she never did. In fact, she stopped engaging in mental health treatment altogether. Grandmother's unstable mental health remained a concern to CSB throughout the case.

{¶5} Shortly after the children came into agency custody, their mother completed her term of incarceration. Because the mother began working on a case plan and the children expressed more interest in reunification with her than with Grandmother, CSB shifted its reunification focus to the mother. Eventually, however, the mother violated the conditions of her probation and was sentenced to another term of incarceration.

{¶6} On February 21, 2013, CSB moved for permanent custody of the children. As a party to this action, Grandmother received timely service of the permanent custody motion as well as notice of each of the scheduled hearing dates. The permanent custody hearing was initially set to commence on June 20, 2013, but was continued because the children's mother was not transported from jail because of a miscommunication between the court and the jail. On June 28, 2013, the trial court rescheduled the permanent custody hearing for August 28 and 29, 2013.

{¶7} On August 12, 2013, although she had not been working on the goals of the case plan and had not visited the children for several months, Grandmother moved for legal custody of them. Following a hearing at which Grandmother appeared with counsel and had the opportunity to present evidence to support her alternate dispositional motion, the trial court found that the children had been in the temporary custody of CSB for more than 12 of the prior 22 months and that permanent custody was in their best interests. Consequently, it terminated parental rights and placed the children in the permanent custody of CSB. Grandmother appeals and raises one assignment of error.

## II.

## **ASSIGNMENT OF ERROR**

THE JUVENILE COURT ABUSED ITS DISCRETION IN GRANTING [CSB'S] MOTION FOR PERMANENT CUSTODY AND TERMINATING THE PARENTAL RIGHTS OF [GRANDMOTHER] AND FAILING TO GRANT HER LEGAL CUSTODY OF THE CHILDREN.

{¶8} Grandmother's sole assignment of error is that the trial court erred by placing the children in the permanent custody of CSB rather than in her legal custody. Before a juvenile court may terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test that: (1) the children are abandoned, orphaned, have been in the temporary custody of the agency

for at least 12 months of the prior 22 months, or that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶9} The trial court found that the first prong of the permanent custody test was satisfied because all three children had been in the temporary custody of CSB for more than 12 of the prior 22 months. Grandmother does not dispute that finding but challenges only the trial court's finding that permanent custody was in the children's best interest. She argues that it was in the children's best interest to be placed in her legal custody rather than in the permanent custody of CSB.

{¶10} Because the trial court's decision whether to place the children in the legal custody of Grandmother was also based on the best interest of the children, "this Court typically conducts a single 'best interest' review of the trial court's decision to place the child[ren] in the permanent custody of the agency rather than in the legal custody to a relative." *In re I.A.*, 9th Dist. Summit No. 26642, 2013-Ohio-360, ¶ 10, quoting *In re T-G.M.*, 9th Dist. Summit No. 25858, 2011-Ohio-3940, ¶ 13. If permanent custody is in the children's best interest, legal custody to Grandmother necessarily is not. "'Consequently, this Court will review the factors set forth in R.C. 2151.414(D) in reviewing the [best interest] decision of the trial court * * *.'" *Id*.

{¶11} When determining whether a grant of permanent custody is in the children's best interests, the juvenile court must consider the following factors:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency * * *.

R.C. 2151.414(D)(1)(a)-(d).[1]

{¶12} At the beginning of this case, Grandmother was allowed to have weekly visitation with the children at the same time they visited their mother. The children enjoyed visiting their mother but began to express their opposition to visiting Grandmother. Moreover, the mother and Grandmother often argued during the joint visits, which tended to create a chaotic atmosphere. After approximately six months, because the mother had become the focus of the agency's reunification efforts and the joint visits had become too chaotic, Grandmother's visits were decreased to once a month.

{¶13} The guardian ad litem later observed that Grandmother was upsetting the children during visits and the oldest child told her that he did not want to visit Grandmother anymore. Consequently, the guardian raised the issue with the trial court and the children were given discretion to determine when they would visit with Grandmother. Their last visit with Grandmother was for S.P.'s birthday in February 2013, six months before the permanent custody hearing.

{¶14} Grandmother argues on appeal that the children should not have been given the discretion to determine when they would visit her. Although Grandmother was notified by the

---

[1] The factor set forth in R.C. 2151.414(D)(1)(e) does not apply to the facts of this case.

trial court about the changes to her visitation, she raised no objection when her visits with the children were decreased from weekly to monthly or when the children were given the discretion to choose not to visit. By that time, CSB was no longer considering Grandmother as a potential custodian for the children because she had not substantially complied with the reunification goals of the case plan. Moreover, she did not show a serious interest in legal custody of the children until she filed her motion two months after the first permanent custody hearing date was rescheduled.

{¶15} The children's lack of interaction with Grandmother during the six months before the permanent custody hearing was based on their expressed wishes, which overlaps with the second best interest factor. The three children had consistently told their counselors, the caseworker, and the guardian ad litem that they did not want to visit Grandmother and did not want to return to her home. On appeal, Grandmother attempts to discredit the opinions of the children and others that she was "mean" to them, suggesting that she was nothing worse than a stern disciplinarian. The evidence presented at the hearing, however, gave the trial court many more reasons to question Grandmother's ability to care for these children than the manner in which she disciplined them.

{¶16} The opinion of the guardian ad litem was that the children had no real bond with Grandmother, despite the fact that they had lived in her home for approximately three years. After their removal from Grandmother's home, none of the children ever stated that they missed Grandmother. In fact, L.P. told one of his counselors that he hated living in Grandmother's home and that he and his siblings were not cared for but were left to fend for themselves. L.P. had assumed the role of parent and would attempt to care for his younger siblings and keep them safe.

{¶17} At the time the children were removed from Grandmother's home, they were living in a crowded and filthy two-bedroom trailer with Grandmother, her nine-year-old child, and, until her recent death, their terminally ill great-grandmother. The only beds for the three children, then ages five, six, and almost nine years old, were a crib and a toddler bed. The trailer was so crowded that it was impossible to move through the rooms without moving and/or stepping over things. In fact, because it was difficult to get from their beds to the bathroom, and the bathroom was cluttered with items on the floor and in the sink, the oldest child had developed a problem soiling himself during the night. As noted by the guardian ad litem in one of her reports, it is not clear why the children lived under those conditions for so long before they were removed from Grandmother's home.

{¶18} The children's custodial history included approximately two years during this case living in the temporary custody of CSB. During that time, the children had been involved in ongoing counseling to address their behavioral problems and their academic delays were being addressed. Although they were removed from their first foster home because of continuing behavioral problems, those problems subsided over time through continued counseling and the love, consistency, and structure in their second foster home.

{¶19} By the time of the hearing, the children had assimilated into the second foster family and were comfortable and relaxed in that home. L.P. was learning to act like a child and trusted the foster parents to provide care for him and his siblings. One of the children's counselors testified that, for the first time in their lives, the children felt safe. Each child wanted to remain in that foster home and the foster parents had expressed a desire to adopt all three children if CSB received permanent custody.

{¶20} During that same period of time, however, Grandmother had not made significant progress on the reunification goals of the case plan. She did engage in counseling for approximately six months with a licensed clinical counselor but the counselor observed that Grandmother began to experience "thought disturbances" which she described as thoughts that were not realistic or logical. The counselor gave several examples of statements made by Grandmother that were incredible and which the counselor verified were not based in fact. Based on her opinion that Grandmother was experiencing unrealistic thoughts, the counselor believed that Grandmother might have more serious mental health problems than she had diagnosed. The counselor informed CSB that Grandmother was in need of a more comprehensive psychological evaluation, which the counselor was not qualified to perform, as well as a psychiatric evaluation to determine whether Grandmother could benefit from psychiatric medication. Consequently, those requirements were added to the case plan, but Grandmother never obtained the additional evaluations and stopped going to counseling altogether because she did not believe that she needed treatment.

{¶21} Because the children had spent most of their lives living in temporary placements and were in a safe and stable home for the first time in their lives, they were in need of a legally secure permanent placement. Because there were no suitable relatives who were willing and able to provide them with such a home, the trial court reasonably concluded that a legally secure permanent placement would only be achieved by terminating parental rights and placing the children for adoption.

{¶22} There was ample evidence before the trial court to support its conclusion that permanent custody was in the best interests of S.P., L.P., and E.P. and that legal custody to Grandmother was not. Grandmother's assignment of error is overruled.

III.

**{¶23}** Grandmother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

PAUL M. GRANT, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

RUSSELL BUZZELLI, Attorney at Law, for Mother.

NOWAR KATIRJI, Attorney at Law, for Father.

LINDA BENNETT, Guardian ad litem.