[Cite as *In re M.P.*, 2019-Ohio-4555.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE M.P.
    A.J.

C.A. Nos.     29332
                    29333

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN17-11-000946
                DN17-11-000947

DECISION AND JOURNAL ENTRY

Dated: November 6, 2019

SCHAFER, Judge.

{¶1} Appellant, A.F. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her two minor children in the legal custody of their maternal grandfather ("Grandfather"). This Court affirms.

I.

{¶2} Mother is the biological mother of M.P., born February 23, 2005; and A.J., born May 9, 2015. The children's fathers did not appeal the trial court's judgment.

{¶3} Several years ago, Mother lost custody of M.P. to the child's father in a domestic relations case because of her untreated mental health and drug problems. Five years later, M.P.'s father developed a substance abuse problem. Because Mother had achieved an extended period of sobriety at that time, the domestic relations court ordered that M.P. return to her custody.

{¶4} After the birth of A.J., Mother was involved with Summit County Children Services Board ("CSB") on a voluntary basis to address renewed concerns about drug use and her mental health. On November 20, 2017, CSB filed complaints to open this case, alleging that A.J. was abused and dependent and that M.P. was a dependent child. CSB later dismissed the allegations of abuse and Mother stipulated to an adjudication of dependency of both children. The children were later placed in the temporary custody of CSB.

{¶5} In addition to maintaining stable employment and housing, the case plan required Mother to obtain assessments for chemical dependency, mental health, and domestic violence and follow all treatment recommendations. Although Mother recognized that she needed help and repeatedly told caseworkers that she would engage in treatment, she failed to consistently do so. Residential treatment was recommended for Mother, but she refused to stay in any program longer than a minimal period. Her longest period of sobriety during this case was while she spent 21 days in a 90-day residential treatment program.

{¶6} Mother engaged in some mental health treatment, and her erratic behavior improved, but she failed to consistently take her medication or attend counseling. Between her ongoing drug use and her untreated mental health problems, Mother's inability to get along with CSB, Grandfather, and her older child was an ongoing problem throughout this case. Mother accepted no responsibility for her family's problems but repeatedly blamed others for their situation.

{¶7} The children were initially placed with paternal grandparents of M.P., but they were later placed with Grandfather. CSB eventually moved to have both children placed in the legal custody of Grandfather. Mother later filed an alternative motion for a six-month extension of temporary custody.

**{¶8}** Following a hearing on the competing dispositional motions, the trial court placed the children in the legal custody of Grandfather. Mother appeals and raises one assignment of error.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GRANTING [CSB'S] MOTION TO MODIFY TEMPORARY CUSTODY TO LEGAL CUSTODY AS SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND RESULTED IN A MANIFEST MISCARRIAGE OF JUSTICE.

**{¶9}** Mother argues that the trial court committed reversible error by placing her children in the legal custody of Grandfather rather than granting her alternative motion to extend temporary custody for another six months. "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *See In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision [regarding legal custody] on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11.

**{¶10}** The trial court was required to conduct a best interest analysis to determine whether to place the children in the legal custody of Grandfather or to extend temporary custody. Additionally, the trial court would have had authority to extend temporary custody only if it also found that Mother had made "significant progress" on the case plan and that there was reasonable cause to believe that the children would be reunified with her or otherwise permanently placed during the extension period. R.C. 2151.415(D)(1). As detailed above,

Mother had not made significant progress on the reunification goals of the case plan because she continued to struggle with drug abuse and mental health problems throughout this case and refused to accept responsibility for her family's situation.

{¶11} The juvenile court is guided by the best interest factors set forth in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the children, their wishes, the custodial history of the children, and their need for permanence. *In re T.A.* at ¶ 17. The juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850, 15CA010860, 2017-Ohio-1, ¶ 17. Of relevance here, those additional factors include the children's adjustment to their current environments and the mental and physical health of all persons involved. *See* R.C. 3109.04(F)(1).

{¶12} Mother's interaction with her children during this case had been limited to supervised visitation because Mother did not comply with the substance abuse and mental health components of the case plan. She often did not cooperate with the supervisors of her visits and her attendance at visits was not consistent.

{¶13} Although Mother interacted well with the younger A.J., she had a strained relationship with M.P., who had been exposed to years of Mother's drug use and domestic violence in the home. Although M.P. engaged in counseling during this case to address her past trauma and strained relationship with Mother, Mother did not. Several witnesses testified that the relationship between Mother and M.P. did not improve during this case.

{¶14} The children's ongoing interaction with Grandfather, on the other hand, had been positive. CSB had no concerns about his ability to meet the needs of both children. The

caseworker explained that the children were doing well in his home and were comfortable there. M.P., who had often played the role of caretaker for A.J. while in Mother's home, no longer felt the need to protect her younger sister. M.P. was doing well in school and had become involved in extracurricular activities.

{¶15} The guardian ad litem testified that M.P., who was almost 14 years old at the time of the hearing, had consistently expressed her desire to remain in Grandfather's home. Because of her strained relationship with Mother, M.P. did not want to see Mother until they had resolved some of their problems through counseling.

{¶16} Because A.J. was three years old at the time of the hearing, the guardian ad litem spoke on her behalf. She opined that legal custody to Grandfather was in the best interest of both children because they were doing well in his home and Mother was not prepared to provide them with a stable home. The guardian ad litem focused on Mother's continued drug use and her failure to accept responsibility for her failures as a parent.

{¶17} The custodial history of 14-year-old M.P. had included years of moving back and forth between the custody of Mother and her father, and two different temporary placements during this case. Almost four-year-old A.P. had spent most of her life moving between placements. Both children needed a legally secure permanent placement and had found a stable home with Grandfather, who was prepared to take legal custody of them.

{¶18} The children had adjusted well to Grandfather's home during the many months that they had lived with him. M.P. was succeeding academically and socially at school and was engaged in activities in that community. Grandfather lives with his sister who provides childcare for the children while Grandfather works. Grandfather has four other sisters who are also closely bonded with M.P. and A.J.

{¶19} Finally, the trial court considered the physical and mental health of all parties. There were no physical or mental health concerns about Grandfather, his sister, or A.J. M.P. needed continued counseling because of the trauma she had experienced in her past and Grandfather was committed to continuing her in counseling.

{¶20} Mother had suffered for years from untreated mental health and substance abuse problems and made little progress during this case toward resolving those problems. The trial court reasonably concluded that those untreated problems prevented Mother from providing these children with an appropriate home.

{¶21} Given the evidence before the trial court, Mother has failed to demonstrate that the trial court lost its way in concluding that legal custody to Grandfather was in the best interest of M.P. and A.J. Mother's assignment of error is overruled.

## III.

{¶22} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CALLAHAN, P. J.
CARR, J.
CONCUR.

APPEARANCES:

PAMELA A. HAWKINS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO GUEST, Assistant Prosecuting Attorney, for Appellee.

LAWRENCE DELINO, JR., Attorney at Law, for Appellee Father of A.J.

M.P., pro se, Appellee Father of M.P.

ANNETTE POWERS, Guardian ad Litem.