**[Cite as *In re R.B.-B.*, 2021-Ohio-818.]**

STATE OF OHIO          )                 IN THE COURT OF APPEALS

                         )ss:            NINTH JUDICIAL DISTRICT

COUNTY OF SUMMIT     )

IN RE: R.B.-B.

                                      C.A. Nos.     29817
                                                      29832

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 18 12 1257

DECISION AND JOURNAL ENTRY

Dated: March 17, 2021

---

SUTTON, Judge.

{¶1}  Appellant, D.V., appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed the minor child R.B.-B. in the permanent custody of Summit County Children Services Board ("CSB"). Neither parent has appealed the trial court's judgment. This Court affirms.

{¶2}  D.V. was married to R.B.-B.'s mother ("Mother") when the child was born on November 20, 2018. On December 18, 2018, while R.B.-B. was still in the neonatal intensive care unit at Akron Children's Hospital, CSB filed a complaint to initiate this case. The agency alleged that R.B.-B. was abused, neglected, and dependent because, among other reasons, the child was born at 30 weeks' gestation and Mother tested positive for cocaine and marijuana at the time of birth. Mother had also lost custody of four older children through prior juvenile court proceedings. Two of those children were in the legal custody of D.V. and the other two had been adopted by another family.

{¶3} Based primarily on Mother's stipulation to her long-standing problem with substance abuse, R.B.-B. was later adjudicated an abused and dependent child and was placed in the temporary custody of CSB. R.B.-B. was physically placed in the home of the family who had adopted two of her half-siblings. The child remained in that kinship home throughout this case.

{¶4} Because D.V. was married to Mother when R.B.-B. was born, he was presumed to be the child's father under R.C. 3111.03(A)(1). D.V. was served with the complaint and was a party to the trial court case, but he had no active involvement in the case during the first six months. D.V. later submitted to DNA testing, which ruled him out as the biological father of R.B.-B. As the presumption of his paternity had been rebutted by clear and convincing evidence under R.C. 3111.03(B), the trial court dismissed him from the case upon a motion by the guardian ad litem.

{¶5} Five months later, however, the trial court vacated its prior dismissal of D.V. as a party because he had expressed an interest in legal custody of R.B.-B. D.V. was the only person who expressed an interest in legal custody of the child.

{¶6} Mother failed to visit R.B.-B. or work on the reunification requirements of the case plan. Despite ongoing efforts by CSB, it was unable to identify the biological father of R.B.-B. during the trial court proceedings. The guardian ad litem ultimately filed a motion for R.B.-B. to be placed in the permanent custody of CSB. D.V. alternatively moved for legal custody of R.B.-B. or for a six-month extension of temporary custody. Following an evidentiary hearing, the trial court denied D.V.'s motions and placed R.B.-B. in the permanent custody of CSB.

{¶7} D.V. appeals and raises five assignments of error. This Court will consolidate some of his assigned errors for ease of review.

II.

{¶8}     Although this issue has not been raised on appeal, this Court emphasizes that D.V. retained his status as a party during the final dispositional hearing.  Juv.R. 2(Y) defines a "party" to a juvenile court proceeding to include "the child's parent or parents, * * * and any other person specifically designated by the court."  It was within the trial court's discretion to determine whether D.V. was "any other person" who should be designated as a party under Juv.R. 2(Y).  *In re H.W.*, 114 Ohio St.3d 65, 2007-Ohio-2879, ¶ 14.  No one has argued on appeal that the trial court abused its discretion in initially designating or reinstating D.V. as a party to these proceedings or that D.V. otherwise lacks standing as a party to challenge the trial court's permanent custody decision.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED PLAIN ERROR AND REVERSIBLE ERROR BY FINDING 12 OF 22 AS ONE OF THE REQUIRED PRONGS FOR PERMANENT CUSTODY.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PLAIN ERROR AND REVERSIBLE ERROR BY FINDING ABANDONMENT ON DIFFERENT TERMS THAN WAS ALLEGED IN THE [MOTION].

{¶9}     This Court consolidates these assignments of error because they challenge the trial court's alternative first prong grounds for permanent custody.  Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based

on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶10} The trial court found that the first prong of the permanent custody test was satisfied for two alternative reasons: R.B.-B. had been in temporary custody of CSB for more than 12 months of a consecutive 22-month period, and both parents had abandoned the child. R.C. 2151.414(B)(1)(d) and R.C. 2151.414(E)(10). D.V. challenges both findings. Because only one first prong finding is necessary to support the permanent custody judgment, however, any error in the alternative finding would be harmless. *In re T.B.*, 9th Dist. Summit Nos. 29560 and 29564, 2020-Ohio-4040, ¶ 12. Therefore, to facilitate review, this Court will confine its discussion to whether clear and convincing evidence supported the trial court's finding that both parents abandoned R.B.-B.

{¶11} D.V.'s challenge to the trial court's finding of parental abandonment under R.C. 2151.414(E)(10) is that the trial court committed reversible error by failing to find that he had also abandoned R.B.-B. Although no one has challenged the party status of D.V. or his standing to appeal, it is undisputed that D.V. had been excluded as the father of R.B.-B.

{¶12} R.C. 2151.414(E)(10) provides that the first prong of the permanent custody test is satisfied by a trial court finding that "[t]he parent has abandoned the child." Under the plain and unambiguous language of this provision, the trial court was required to find that one or both parents had abandoned R.B.-B. It was not required to find that D.V., a non-parent, had also abandoned the child. Because D.V.'s abandonment argument fails to challenge the trial court's finding of abandonment by either or both parents, it lacks merit.

{¶13} Moreover, the trial court's finding of parental abandonment was fully supported by the record. It was not disputed that Mother failed to have any contact with R.B.-B. for more than one year, which is well more than the 90-day presumptive period of abandonment required by R.C. 2151.011(C). Despite ongoing attempts by CSB to identify and locate the biological father of the child, none of the alleged fathers or any other potential father had any contact with the child during this case. *See In re L.M.*, 9th Dist. Summit No. 29687, 2020-Ohio-4451, ¶ 19.

{¶14} No evidence was presented to rebut the presumption that both Mother and the biological father had abandoned R.B.-B. Because D.V. has failed to demonstrate error in the trial court's first prong finding of abandonment under R.C. 2151.414(E)(10), his first and second assignments of error are overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED THE PARENTS' RIGHTS AND PLACED THE CHILD[] IN THE PERMANENT CUSTODY OF CSB WHEN THE AGENCY DID NOT PROVIDE [D.V.] WITH REASONABLE REUNIFICATION EFFORTS.

{¶15} D.V. argues that the trial court erred in terminating parental rights in this case because CSB failed to make reasonable efforts to place R.B.-B. with him. He does not argue that the agency failed to make reasonable efforts to reunify R.B.-B. with Mother or place the child with her biological father, but only that the agency did not make reasonable efforts to place the child with him. D.V.'s argument under this assignment of error is again based on the faulty premise that he had the same fundamental rights in this case as the child's parents.

{¶16} Although R.C. Chapter 2151 does not define "reasonable efforts," courts construe the term to mean "'[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed[.]' " *In re T.B.-W.*, 9th Dist. Summit

No. 27544, 2015-Ohio-992, ¶ 15, quoting *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28, quoting Will L. Crossley, *Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation*, 12 B.U.Pub.Int.L.J. 259, 260 (2003). Although the term "home" is not defined in R.C. Chapter 2151 or applicable regulations of the Ohio Administrative Code, the term "is generally understood to mean where the child's family resides." *In re M.G.*, 9th Dist. Summit No. 29596, 2020-Ohio-3872, ¶ 11.

{¶17} As further explained in *In re M.G.*:

> This Court and the Ohio Supreme Court have long construed reasonable efforts to return the child "home" as efforts to reunite the child with his family. *See, e.g.*, *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 4 ("except for some narrowly defined statutory exceptions, the state must make reasonable efforts to reunify the family before terminating parental rights."); *In re S.R.*, 9th Dist. Summit No. 27209, 2014-Ohio-2749, ¶ 36-37 (emphasizing that reasonable efforts are generally required to reunify a child with one or both parents because the parents have a fundamental right to raise their children without state intervention and must be afforded every procedural protection that the law allows).
>
> In *In re C.F.*, at ¶ 27-29, the Ohio Supreme Court emphasized that, although the concept of reasonable reunification efforts is not specifically defined in R.C. Chapter 2151, Ohio's child welfare laws were designed to balance the fundamental rights of parents to raise their own children with the state's interest in protecting the health and safety of its children. R.C. Chapter 2151 is to be construed so that children are separated from their parents "only when necessary for the child's welfare or in the interests of public safety." *Id.* at ¶ 29, quoting R.C. 2151.01(A).

*Id.* at ¶ 12-13.

{¶18} D.V. cites no authority to support his argument that he, as a non-parent who never lived with or had any custodial rights to this child, was entitled to reasonable reunification efforts in this case. Because D.V.'s argument is based on an unsupported legal premise, his third assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

THE TRIAL COURT COMMITTED PLAIN ERROR AND REVERSIBLE ERROR BY GRANTING THE MOTION FOR PERMANENT CUSTODY AND NOT GRANTING [D.V.] [LEGAL] CUSTODY.

**ASSIGNMENT OF ERROR V**

THE TRIAL COURT COMMITTED PLAIN ERROR AND REVERSIBLE ERROR BY GRANTING THE MOTION FOR PERMANENT CUSTODY AND NOT GRANTING [D.V] A SIX[-] MONTH EXTENSION.

{¶19} This Court will address the final two assignments of error together because D.V. argued them jointly. D.V. argues the trial court committed reversible error by granting CSB permanent custody rather than granting him legal custody of the child or, alternatively, a six-month extension of temporary custody.

{¶20} Under the second prong of the permanent custody test, the trial court found that permanent custody was in the best interest of R.B.-B. The trial court was also required to conduct a best interest analysis to determine whether to place R.B.-B. in the legal custody of D.V. or to extend temporary custody.[1] *In re M.P.*, 9th Dist. Summit Nos. 29332 and 29333, 2019-Ohio-4555, ¶ 10. This Court has repeatedly held that, if permanent custody to CSB was in the child's best interest, an alternative disposition necessarily was not. *See*, *e.g*, *In re S.P.*, 9th Dist. Summit No. 27138, 2014-Ohio-1211, ¶ 10.

{¶21} When determining the child's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the child, her wishes, the custodial history of the child, the need for permanence in the child's life, and whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case.

---

[1] To extend temporary custody, the trial court also would be required to find that "significant progress" had been made on the case plan. R.C. 2151.415(D)(1). This Court will confine its review to the best interest of the child because that legal requirement is dispositive.

R.C. 2151.414(D)(1); *In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. The factor set forth in R.C. 2151.414(E)(10) applied to the facts of this case because the trial court found that both parents had abandoned the child.

{¶22} The child's interaction and interrelationships with her parents during this case had been nonexistent. Moreover, D.V. had initially told CSB that he had no desire to take custody of R.B.-B. or to work on the case plan. He did not meet R.B.-B. until he began visiting her more than six months into this case. The trial court heard testimony that the visits between D.V. and R.B.-B had gone well, but witnesses testified that they had not observed a bond between the two. D.V. has legal custody of two of the child's older half-siblings, but R.B.-B. had never met them and, consequently, had no sibling bond with them.

{¶23} The interaction between R.B.-B. and her kinship family, on the other hand, had been extremely positive. She had been placed there for most of her young life and, as the trial court observed, this family was the only family that she had ever known. Also living in that home are R.B.-B.'s two other half-siblings, who were adopted by the family. R.B.-B. had developed a close bond with those two siblings as well as the entire kinship family. The kinship family had expressed interest in adopting R.B.-B.

{¶24} Next, the trial court considered the opinion of the guardian ad litem, as R.B.-B. was too young to express her own wishes. The guardian ad litem believed that permanent custody was in the best interest of R.B.-B. because both parents had abandoned her and D.V. did not step forward to seek custody until almost one year into this case.

{¶25} After her release from Akron Children's Hospital, the custodial history of R.B.-B. had been spent living with the kinship family. By the time of the hearing, she had been living with that family for well over a year. R.B.-B. had spent her life in a temporary placement and needed

a legally secure permanent placement. Because no one else had expressed interest in custody of the child and D.V. had not developed a bond with her, the trial court reasonably concluded that a legally secure placement would be achieved by placing the child in the permanent custody of CSB.

{¶26} Finally, the trial court was required to consider its finding that both parents had abandoned the child. That finding further weighed in favor of permanent custody and against legal custody to D.V. Legal custody is a less drastic placement than permanent custody because it does not completely sever a family relationship but leaves intact the parents' residual rights, privileges, and responsibilities. *In re A.L.*, 9th Dist. Summit No. 28400, 2017-Ohio-7689, ¶ 18. In this case, the parents of R.B.-B. had never exercised any of their parental rights or responsibilities toward their child. Because the parents had nothing beyond a biological relationship with their child, the trial court was presented with no reason to preserve this family relationship.

{¶27} D.V. has failed to demonstrate any error in the trial court's conclusion that permanent custody was in the best interest of the child. D.V.'s fourth and fifth assignments of error are overruled.

III.

{¶28} D.V.'s assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETTY SUTTON
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

TONY PAXTON, Attorney at Law, for Mother.

ALEXANDRA HULL, Guardian ad Litem.