[Cite as *In re K.C.*, 2021-Ohio-2489.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: K.C.
     K.C.

C.A. Nos.    29898
                 29899

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 19-07-601
              DN 19-07-602

DECISION AND JOURNAL ENTRY

Dated: July 21, 2021

CARR, Judge.

{¶1}    Appellant, J.C. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to two of her minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}    Mother is the biological mother of K.C., born March 12, 2016; and K.C., born May 23, 2017. Mother has an older child, N.C., who was also removed from her custody during the trial court proceedings but is not a party to this appeal. The father of K.C. and K.C. did not appeal from the permanent custody judgment.

{¶3}    On July 22, 2019, CSB filed complaints, alleging that K.C. and K.C. were neglected and dependent children because the home was filthy, and Mother did not consistently supervise

the young children.  The complaint further alleged that the older sibling, N.C., had returned from a visit with his father to find K.C. and K.C., then ages two and three years old, alone in a room while Mother was apparently in the bathroom.  N.C. observed three-year-old K.C. "trying to smoke a bowl" of marijuana.

{¶4}  Following a hearing, the children were adjudicated neglected and dependent.  Although Mother had contested the adjudication of her children, she admitted that she often used marijuana in the presence of her young children and that they had access to her marijuana.  The juvenile court later placed K.C. and K.C. in the temporary custody of CSB.

{¶5}  During the following year, Mother did not work on the reunification goals of the case plan, did not regularly visit her children, and failed to maintain consistent contact with CSB or the guardian ad litem.  After March 9, 2020, Mother's whereabouts were unknown and CSB lost all contact with her for nearly four months.

{¶6}  On June 22, 2020, CSB moved for permanent custody of K.C. and K.C.  Following an evidentiary hearing, the trial court terminated parental rights and placed both children in the permanent custody of CSB.  Mother appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN DENYING MOTHER'S MOTION FOR LEGAL CUSTODY OR IN THE ALTERNATIVE MOTHER'S MOTION FOR A SIX-MONTH EXTENSION AND IN FINDING THAT IT WAS IN THE CHILDREN'S BEST INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF CSB.  THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7}  Through her sole assignment of error, Mother asserts that the trial court's permanent custody decision was against the manifest weight of the evidence.  Before a juvenile

court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); see also *In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶8} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶9} The trial court found that the first prong of the permanent custody test was satisfied for two alternative reasons: Mother failed to remedy the conditions that brought her children into agency custody and prevented them from returning home, and she demonstrated a lack of commitment toward the children by failing to regularly visit them when able to do so. R.C.

2151.414(E)(1) and (4). Although Mother's stated assignment of error does not challenge the trial court's first prong finding, her argument under this assignment of error does.

{¶10} Because only one finding is necessary to support the first prong of the permanent custody test, any error in an alternative finding would be harmless. *In re R.B.-B.*, 9th Dist. Summit Nos. 29817 and 29832, 2021-Ohio-818, ¶ 10, citing *In re T.B.*, 9th Dist. Summit Nos. 29560 and 29564, 2020-Ohio-4040, ¶ 12. For ease of discussion, this Court will confine its review to whether the trial court properly found that Mother failed to remedy the conditions that caused the initial and ongoing removal of her children from her custody. *See In re R.B.-B.* at ¶ 10; R.C. 2151.414(E)(1).

{¶11} From the date of the initial disposition on October 9, 2019, the court-ordered case plan required Mother to obtain substance abuse and parenting/mental health assessments and follow all treatment or other follow-up recommendations; obtain and maintain stable housing; and demonstrate that she can meet the basic needs of her children.

{¶12} The evidence was not disputed that Mother never obtained a substance abuse assessment. Although the initial complaint alleged only marijuana use by Mother, CSB was also concerned that Mother used more serious drugs because of drug paraphernalia found in her home and confirmed cocaine use by the maternal grandmother, with whom Mother lived. Mother admittedly continued to use marijuana, failed several drug tests, and stopped submitting to any drug testing approximately two months after the case plan was adopted by the trial court.

{¶13} Similarly, Mother did not comply with the mental health portion of the case plan. Mother testified that she suffered from anxiety, had been treated with psychiatric medication in the past, but was not currently involved in any mental health treatment. Mother explained that she used marijuana to deal with symptoms of anxiety, but she did not have a medical marijuana card,

nor did she seek professional assessments or services to appropriately diagnose or treat her mental health problems. Mother further testified that she had a history of domestic violence in her family, and that her father had obtained a protection order against her for that reason.

{¶14} Throughout this case, Mother did not keep CSB updated with her current phone number, nor did she call to maintain regular contact with the agency. The caseworker testified that he reached out to several family members but was still unsuccessful in contacting Mother when he wanted to speak to her. He further explained that Mother called him about once every two months, except for a four-month period when she made no contact.

{¶15} When the caseworker was able to speak to Mother, he reminded her about the importance of working on the reunification goals of the case plan. Mother repeatedly told him that she was going to engage in mental health and substance abuse treatment, but she never followed through with case plan services. Because Mother did not engage in any substance abuse or mental health assessments or treatment, however, CSB was not able to evaluate the full extent of those problems and how they affected her ability to care for these children. More significantly, despite having the opportunity to do so, Mother had not begun to address any of those problems.

{¶16} Moreover, at the time of the hearing, Mother continued to lack stable housing for herself or her children. She was living in the home of her late grandmother, that would soon be lost to the bank because of a reverse mortgage. Mother testified that she planned to move elsewhere, but she had not yet secured that housing, nor had it been seen or approved by CSB. Furthermore, Mother planned to live with another adult who had not been met, investigated, or approved by CSB or the guardian ad litem.

{¶17} The evidence before the trial court clearly and convincingly demonstrated that Mother had not begun to address any of the problems that caused her children to be removed from

her custody. Therefore, the trial court did not lose its way by concluding that CSB established the first prong of the permanent custody test because Mother "failed continuously and repeatedly to substantially remedy the conditions" that caused K.C. and K.C. to remain placed outside the home. R.C. 2151.414(E)(1).

{¶18} Next, Mother challenges the trial court's finding that permanent custody was in the best interest of K.C. and K.C. Mother argues that, rather than terminating her parental rights, it was in the children's best interest to either be placed in her legal custody or for the trial court to extend temporary custody for another six months. The trial court was also required to conduct a best interest analysis to determine whether to place the children in the legal custody of Mother or to extend temporary custody. *In re R.B.-B.*, 2021-Ohio-818, at ¶ 20. This Court has repeatedly held that, if permanent custody to CSB was in the child's best interest, an alternative disposition necessarily was not. *Id.*, citing *In re S.P.*, 9th Dist. Summit No. 27138, 2014-Ohio-1211, ¶ 10. Moreover, to extend temporary custody, the trial court also would have been required to find that "significant progress" had been made on the case plan. R.C. 2151.415(D)(1). As explained already, Mother had not made significant progress on the case plan.

{¶19} When determining the children's best interest, the trial court must consider all relevant factors, including: the interaction and interrelationships of the children, the wishes of the children, their custodial history; and their need for permanence in their lives and whether such a placement can be achieved without a grant of permanent custody.[1] R.C. 2151.414(D)(1)(a)-(d); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

---

[1] Although the trial court is also required to consider whether any of the factors set forth in R.C. 2151.414(E)(7)-(11) apply, none of those factors are relevant in this case.

{¶20} Mother's interaction with her children during this case was limited to supervised visitation because she never complied with the substance abuse or mental health components of the case plan. During March through late May 2020, CSB replaced in-person visitation with virtual visits because of the COVID-19 pandemic. By the end June 2020, however, CSB resumed in-person visitations.

{¶21} Mother did not see her children virtually or in person between early March 2020 and late July 2020. In fact, she did not resume consistent in-person visitation with her children until October 2020. Mother testified about several reasons for her failure to visit her children or comply with the case plan, but her testimony was disputed by other evidence presented at the hearing. For example, Mother testified that she did not visit the children because she called the caseworker for information, but he never returned her calls. That testimony was contradicted by the testimony of the caseworker that he reached out to mother repeatedly and tried to contact her through her relatives and the children's father. The evidence further demonstrated that Mother knew that the children's father was visiting them but did not contact CSB to attend those visits or to arrange visits for herself.

{¶22} Mother also attempted to explain her lack of case plan compliance with her testimony that she worked on weekdays and was unable to find any services available on weekends. She admitted on cross-examination, however, that she worked only parttime and had not asked whether any service providers could arrange appointments to accommodate her work schedule.

{¶23} K.C. and K.C. were only three and four years old at the time of the hearing and the guardian did not believe that they were mature enough to express their own wishes about where to live. She opined that permanent custody was in the best interest of both children because they had

adjusted well to living with the foster family and Mother had made no effort to work toward reunification. The guardian ad litem further testified that she provided Mother with her cell phone number that had not changed throughout this case, but she had spoken to Mother only two times because Mother failed to maintain consistent contact with her.

{¶24}  The custodial history of K.C. and K.C. had included an extended period of living in a temporary placement while their parents made no progress on the reunification goals of the case plan.   They needed a legally secure permanent placement and CSB had found no option for such a placement other than permanent custody.  Mother admitted that she had not complied with any of the requirements of the case plan and that she lacked any family support to help her care for her children.  CSB had been unable to find a suitable relative or kinship placement to provide a safe and stable home for these children.

{¶25}  Consequently, the trial court did not lose its way in finding that permanent custody was in the best interest of K.C. and K.C.  Mother's assignment of error is overruled.

### III.

Mother's assignment of error is overruled.  The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

HOLLY FARAH, Guardian ad Litem.