[Cite as *In re G.W.*, 2021-Ohio-3430.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: G.W.

C.A. No.     29966

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 19 11 0980

DECISION AND JOURNAL ENTRY

Dated: September 29, 2021

HENSAL, Presiding Judge.

{¶1}    Appellant, D.W. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child and placed the child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}    Mother is the biological mother of G.W., born January 19, 2008. The alleged father of G.W. is deceased. Mother has two older children who are now adults and are not parties in this case. Approximately one month before the permanent custody hearing in this case, Mother gave birth to another child. That child was also removed from Mother's custody but is not at issue in this appeal.

{¶3}    CSB has a history with Mother dating back to shortly after G.W.'s birth. G.W. and her two older siblings were removed from Mother's custody because Mother admitted using

marijuana and receiving minimal prenatal care while pregnant with G.W.; the older children were exhibiting sexualized behavior, because they had been allowed to watch a movie with sexual content; Mother was living in a location that lacked adequate room and supplies for the children; and Mother had no place for her infant child to sleep. All three children were later adjudicated dependent and placed in the temporary custody of CSB. The children were returned to Mother's custody more than a year and a half later and that case was ultimately closed.

{¶4} This case was initiated by CSB filing a complaint on November 11, 2019, alleging that G.W. was neglected and dependent because Mother had been living with then 12-year-old G.W. in a battered women's shelter but left G.W. there for two days while she sought inpatient psychiatric treatment at a local hospital. In addition to Mother's unstable mental health, CSB was also concerned about Mother's history of substance abuse. The police removed G.W. from the shelter pursuant to Juvenile Rule 6.

{¶5} G.W. was adjudicated neglected and dependent and was later placed in the temporary custody of CSB. The court-ordered case plan required Mother to obtain and maintain stable income and housing; manage her household expenses; and obtain mental health and substance abuse assessments and follow all recommendations.

{¶6} During the next year, however, Mother did not comply with any of the reunification requirements of the case plan. She did not obtain substance abuse or mental health assessments, did not engage in any treatment, and continued to test positive for cocaine and/or THC. Mother never verified that she had stable housing or income and did not maintain contact with CSB.

{¶7} On October 6, 2020, CSB filed a motion for permanent custody of G.W. Following a hearing on the motion, the trial court terminated parental rights and placed G.W. in the permanent custody of CSB. Mother appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT'S FINDING THAT THE MINOR CHILD WAS DEPENDENT IS [AGAINST] THE MANIFEST WEIGHT OF THE EVIDENCE AND AGAINST THE BEST INTERESTS OF THE MINOR CHILD.

{¶8} Mother's sole assignment of error, as stated, challenges the trial court's finding that the child is dependent. Mother did not file an appeal from the child's adjudication but has appealed from the permanent custody decision. Although CSB responds that Mother improperly captioned her assignment of error, it also recognizes that she argues that the permanent custody decision is against the manifest weight of the evidence. Therefore, in the interest of justice, this Court will address her underlying argument that the weight of the evidence did not support the trial court's permanent custody decision.

{¶9} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under Revised Code Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).

Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶10} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶11} The trial court found that the first prong of the permanent custody test was satisfied because Mother had failed to substantially remedy the conditions that caused G.W.'s continued removal from the home. R.C. 2151.414(E)(1). Mother argues that she attempted to remedy her parenting problems but was prevented from doing so because of health-related shutdowns during the Covid-19 pandemic. Her argument is not supported by the record.

{¶12} According to the undisputed evidence at the hearing, although there were some limitations on services and visits caused by Covid-19 health restrictions, case plan services were available to Mother throughout the pandemic. Mother scheduled some appointments for assessments with service providers but never followed though by attending the appointments. The caseworker had limited contact with Mother because Mother failed to keep the caseworker informed about her address or phone number and did not reach out to CSB on a consistent basis.

Mother also did not have stable housing or employment, so the caseworker did not know where to find her.

{¶13}  Each time the caseworker was able to speak to Mother, she reminded her about the requirements of the case plan.  Mother repeatedly told the caseworker that she would engage in case plan services to address her mental health and substance abuse problems, but she never did.  Mother submitted to three drug screens for CSB during this case, all of which were positive for cocaine and/or THC.

{¶14}  Mother became pregnant during this case.  Although she told G.W. about the pregnancy, she attempted to conceal it from CSB.  Mother attended one prenatal medical appointment during which she tested positive for cocaine and THC.  She gave birth at home, but CSB later learned about the birth and removed the infant from her custody.  Given the evidence presented at the hearing, Mother has failed to demonstrate that the trial court lost its way in concluding that Mother failed to substantially remedy the conditions that caused G.W.'s continued removal from the home.  R.C. 2151.414(E)(1).

{¶15}  Next, Mother challenges the trial court's finding that permanent custody was in the best interest of G.W.  Mother argues that, rather than terminating her parental rights, it was in G.W.'s best interest for the trial court to extend temporary custody for another six months.  The trial court was required to conduct a best interest analysis to determine whether to grant permanent custody or an extension of temporary custody.  *In re R.B.-B.*, 9th Dist. Summit Nos. 29817 and 29832, 2021-Ohio-818, ¶ 20.  This Court has repeatedly held that, if permanent custody to CSB was in the child's best interest, an alternative disposition necessarily was not.  *Id.*, citing *In re S.P.*, 9th Dist. Summit No. 27138, 2014-Ohio-1211, ¶ 10. Moreover, to extend temporary custody, the trial court also would have been required to find that "significant

progress" had been made on the case plan. R.C. 2151.415(D)(1). As has been explained, Mother had not made significant progress on the reunification goals of the case plan.

{¶16} When determining a child's best interest, the trial court must consider all relevant factors, including: the interaction and interrelationships of the child, the wishes of the child, the child's custodial history; and his need for permanence in his life and whether such a placement can be achieved without a grant of permanent custody.[1] R.C. 2151.414(D)(1)(a)-(d); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶17} Mother's interaction with G.W. during this case was limited to supervised visitations because Mother had not addressed the mental health or substance abuse components of the case plan. Although Mother appeared to be sober during her visits with G.W. and the visits generally went well, G.W. would become very upset when Mother did not show up for her scheduled visits. According to the caseworker, sometimes Mother was consistent in attending visits and sometimes she was not. It is not clear from the record how many visits Mother missed.

{¶18} G.W., who was 13 years old at the time of the hearing, had expressed her desire to return to Mother's custody. The guardian ad litem further explained that G.W. was "mature enough to understand that under the current circumstances that [returning to Mother's custody] is not possible." G.W., who had been in counseling throughout this case, understood that she needed a safe and stable environment. The guardian ad litem opined that permanent custody was in the best interest of G.W.

{¶19} G.W.'s custodial history has included two lengthy periods of removal from Mother's custody, as an infant and again at 12 years old. While living with Mother for more

---

[1] R.C. 2151.414(D)(1)(e) also requires the trial court to consider whether any of the factors set forth in R.C. 2151.414(E)(7)-(11) apply to this case, but none of those factors are relevant.

than ten years, it is unknown how long G.W. was exposed to Mother's unstable mental health and substance abuse. G.W. had made progress during counseling but she needed a legally secure permanent placement. Mother could not provide her with a safe and stable placement and CSB had found no suitable relatives who were willing and able to do so.

{¶20} Therefore, the trial court did not lose it way by concluding that a legally secure permanent placement would be achieved by placing G.W. in the permanent custody of CSB and that permanent custody was in her best interest. Mother has failed to demonstrate that the trial court's permanent custody decision was against the manifest weight of the evidence. Mother's assignment of error is overruled.

III.

{¶21} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

CARR, J.
SUTTON, J.
CONCUR.

APPEARANCES:

ADAM M. VANHO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

SHUBHRA AGARWAL, Attorney at Law, for Appellee.

HOLLY FARAH, Guardian ad Litem.