[Cite as *In re A.R.*, 2021-Ohio-2573.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: A.R.

C.A. No.     29917


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 19 01 0081

DECISION AND JOURNAL ENTRY

Dated: July 28, 2021

---

HENSAL, Presiding Judge.

{¶1}     Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed the child A.R. in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2}     Mother and Father are the biological parents of A.R. (d.o.b. 8/4/18). When the child was approximately six months old, CSB filed a complaint alleging that A.R. was a dependent child based on concerns regarding domestic violence between the parents and Mother's use of drugs during her pregnancy and around the child after her birth. At the adjudicatory hearing, Mother stipulated that A.R. was dependent. Because Father was in jail, CSB also presented evidence to establish the child's dependency. At the dispositional hearing, Mother stipulated to the child's placement in the temporary custody of CSB, while evidence was also presented based

on Father's ongoing incarceration. Mother was granted supervised visitation. The juvenile court adopted the agency's case plan as the order of the court.

{¶3} After the first review hearing, Mother's visitation was increased based on some progress with her case plan objectives. Four months later, Mother showed evidence of struggling. She had overdosed since the prior hearing and continued to test positive for methamphetamine, heroin, fentanyl, and marijuana. She had not yet begun substance abuse treatment as required. Although she was permitted to visit with the child twice a week, Mother was not consistent in attending visitation. Nevertheless, the magistrate again increased Mother's weekly visitation.

{¶4} Eleven months into the case, CSB filed a motion for permanent custody. Mother moved for a six-month extension of temporary custody. The court scheduled the permanent custody hearing for approximately six months later. Shortly beforehand, Mother moved to continue the hearing for health reasons. The juvenile court continued the hearing for another three months.

{¶5} Nineteen months into the case and on the evening before the permanent custody hearing was scheduled to begin, Mother fired her court-appointed counsel and hired private counsel. That evening, Mother's new attorney filed a notice of appearance and a motion to continue the permanent custody hearing, as he had just been retained. The next morning before the hearing, Mother's attorney filed four alternative dispositional motions seeking: (1) a six-month extension of temporary custody, (2) legal custody to the maternal grandmother, (3) legal custody to maternal aunt H.V., and (4) legal custody to maternal aunt J.C. ("Aunt").

{¶6} Immediately before the permanent custody hearing, the juvenile court heard the attorneys' arguments regarding Mother's motion for a continuance. Thereafter, the judge denied the motion upon finding that another continuance would inconvenience the other parties, attorneys,

and witnesses; would leave the child in custodial limbo for another 15 percent of her life (assuming a four-month continuance); and could be a dilatory tactic given the last-minute firing of appointed counsel and retention of private counsel. Notwithstanding the juvenile court's denial of a continuance, the court nevertheless informed the parties that it would revisit the issue when it was time for Mother's attorney to cross-examine the agency caseworker. Specifically, the court indicated a willingness to continue the matter for further proceedings so that Mother's attorney would have time to prepare for both cross-examination of the agency's key witness and the presentation of Mother's case in chief. The judge also granted a recess to allow Mother's attorney the opportunity to obtain copies of CSB's exhibits and review them prior to commencing the hearing.

{¶7} On the first day of the hearing, Mother's attorney cross-examined two records custodians and the child's foster mother who testified on behalf of CSB. The agency also presented the testimony of its caseworker. The juvenile court then continued the hearing for two months to allow Mother's attorney time to prepare to cross-examine the caseworker and present Mother's case in chief.

{¶8} At the conclusion of the hearing, the juvenile court allowed time for the parties to file written closing arguments, proposed findings of fact and conclusions of law, and proposed judgment entries. On Mother's counsel's request, the juvenile court granted Mother an additional week to file her proposals after CSB's proposals were due. No party filed written closing arguments or proposed judgment entries, while only CSB filed proposed findings of fact and conclusions of law.

{¶9} The juvenile court issued an order to which it attached an unsigned copy of a portion of CSB's proposed findings of facts and conclusions of law. The document contained only the

agency's proposed findings of facts. The trial court asserted that it was adopting those, as well as the agency's proposed judgment entry,[1] as its own. Nevertheless, the juvenile court further issued a separate judgment which included findings of facts, conclusions of law, and specific orders granting CSB's motion for permanent custody and terminating all parental rights to A.R. Mother filed a timely appeal in which she raises four assignments of error for review. This Court consolidates some assignments of error to facilitate review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED PLAIN ERROR AND REVERSIBLE ERROR BY FINDING 12 OF 22 AS ONE OF THE REQUIRED PRONGS FOR PERMANENT CUSTODY.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY FINDING THAT IT WAS IN THE BEST INTERESTS OF THE CHILD TO BE PLACED IN THE PERMANENT CUSTODY OF [CSB] EVEN THOUGH IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶10} Mother's first two assignments of error challenge the substance of the juvenile court's judgment that granted permanent custody of the child to CSB. First, she challenges one of the juvenile court's alleged findings regarding the first prong of the permanent custody test. Second, she argues that the permanent custody judgment was against the manifest weight of the evidence. This Court disagrees with both arguments.

{¶11} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder

---

[1] There is no proposed judgment entry in the record.

of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶12} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under Revised Code Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).

{¶13} Mother's first assignment of error alleges that the juvenile court committed reversible error by basing its award of permanent custody on the first-prong ground that A.R. had been in the agency's temporary custody for 12 months of a consecutive 22-month period. It is well settled that a parent suffers no prejudice when the juvenile court makes an erroneous first-prong finding, as long as it has properly found one of the alleged first-prong grounds for permanent custody. *In re U.D.*, 9th Dist. Summit No. 29195, 2019-Ohio-512, ¶ 9, citing *In re K.C.*, 9th Dist. Lorain No. 18CA011258, 2018-Ohio-2348, ¶ 11, 21 (holding that, although the juvenile court erred in basing its permanent custody decision on a ground that was not alleged in the motion, the error was harmless because the parent had notice of an alternative ground that was properly alleged and proven at the hearing).

{¶14} Here, CSB alleged as its sole first-prong ground that the child could not or should not be returned to her parents' custody pursuant to Section 2151.414(B)(1)(a). The juvenile court found that the agency had proved that allegation by clear and convincing evidence, and Mother does not challenge that finding. Moreover, the evidence supported that first-prong finding. Accordingly, even if the juvenile court made an additional first-prong finding as to a ground that was not alleged, the error would be harmless.

{¶15} A review of the judgment indicates that the juvenile court did not, however, find "12 of 22" as an alternative first-prong basis for its award of permanent custody. The trial court did find that, on April 24, 2019, A.R. "was placed in the Temporary Custody of [CSB]. The child has remained in the Temporary Custody of [CSB] since that time." However, the court made no express finding that A.R. had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period for purposes of Section 2151.414(B)(1)(d). Accordingly, the juvenile court did not make that finding as a first-prong basis, but instead made the finding pursuant to Section 2151.414(D)(1)(c), relevant to a best interest consideration. Section 2151.414(D)(1)(c) considers the child's custodial history, including, but not limited to, whether the child has been in the temporary custody of a public children services agency in excess of 12 months of a consecutive 22-month period. Accordingly, as the juvenile court did not rely on "12 of 22" in finding that CSB had established a first-prong basis for permanent custody, Mother's first assignment of error is overruled.

{¶16} In her second assignment of error, Mother argues that the award of permanent custody is against the manifest weight of the evidence because it was contrary to the best interest of the child. Mother does not challenge the juvenile court's first-prong finding that A.R. could not or should not be returned to Mother's custody. Moreover, she does not argue that she was able to

provide a safe and stable home for A.R.  Instead, Mother challenges the juvenile court's denial of her motion for legal custody to Aunt.[2]

{¶17}  The best interest factors include: the interaction and interrelationships of the children, the wishes of the children, the custodial history of the children, the children's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in Section 2151.414(E)(7)-(11) apply.  R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.  Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."  (Internal quotations omitted.)  *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶18}  When reviewing the propriety of an award of permanent custody in lieu of granting a competing motion for legal custody, this Court considers the following:

> Because the trial court's decision whether to place the child[ ] in the legal custody of [any person] was also based on the best interest of the child[ ], this Court typically conducts a single best interest review of the trial court's decision to place the child[ ] in the permanent custody of the agency rather than in the legal custody to a relative.  If permanent custody is in the child[ ]'s best interest, legal custody to [any other person] necessarily is not. Consequently, this Court will review the factors set forth in [Section] 2151.414(D) in reviewing the best interest decision of the trial court.

(Internal quotations and citations omitted.)  *In re D.T.*, 9th Dist. Summit No. 29876, 2021-Ohio-1650, ¶ 15., quoting *In re S.P.*, 9th Dist. Summit No. 27138, 2014-Ohio-1211, ¶ 10.

---

[2] Mother does not challenge the denial of her motions for legal custody to the maternal grandmother or the other maternal aunt.  Nor does she challenge the denial of her motion for a six-month extension of temporary custody.

{¶19}  A.R. was removed from Mother's care when the child was not yet six months old. She remained in agency custody and was placed in foster care throughout the duration of the case, in excess of two years.

{¶20}  The child has a bond with Mother and the foster mother.  She is also comfortable with Aunt who has had all-day visits with the child in her home.  According to Aunt, A.R. gets along well with Aunt's two boys, one of which is the same age as A.R.  The other boy is a year younger.

{¶21}  A.R. has some gastrointestinal and sensory issues.  Initially, she screamed incessantly for a few months after placement in her current foster home.  The child then engaged in a six-to-eight-month period of head banging, during which she had to wear a helmet to protect her skull.  While the head banging has subsided, the child now emits high pitched screams when she is agitated or wants attention.  A.R. requires constant stimulation.  The foster mother has learned how to de-escalate the child's tantrums by refocusing A.R.'s attention.  The child is receptive to those proactive measures.

{¶22}  The two-year-old child was too immature to express her wishes regarding custody. The guardian ad litem testified that permanent custody was necessary to meet the best interest of the child.  The guardian ad litem had earlier recommended a six-month extension of temporary custody in her report filed in advance of the second day of the hearing.  She opined that additional time was necessary to allow the agency to further assess Aunt and to give Aunt the opportunity to visit for longer periods of time with the child and demonstrate her commitment to A.R.  By the third day of the hearing two months later, however, the guardian ad litem modified her recommendation to permanent custody based on concerns regarding Aunt's ability to provide a safe and stable home for the child.

{¶23} The child requires a legally secure home in a timely manner. Neither parent could provide that for her within a reasonable time. Father was serving a prison sentence that was expected to last several more years. Mother had made negligible progress on her case plan objectives.

{¶24} Mother was required to engage in mental health services to address childhood trauma and her history of domestic violence with Father. Despite numerous referrals by CSB, Mother failed to engage in services with any provider. Instead of working on developing good decision-making skills, Mother continued to maintain contact with Father, who sent her threatening and emotionally abusive letters from prison. In addition, Mother has a current boyfriend who has a criminal history, including a pending charge for domestic violence.

{¶25} Mother was also required to engage in substance abuse treatment to address her long term drug use. She failed to obtain her required assessment, did not participate in treatment, and refused to cooperate with many of the caseworker's requests for drug screens. Of the eight screens to which Mother submitted, seven were positive for drugs, including oxycodone, methamphetamine, marijuana, fentanyl, and heroin. While the case was pending, Mother overdosed on fentanyl and had to be revived with Narcan.

{¶26} Mother's last case plan objective addressed basic needs. Mother was living at one point between her car and her mother's home, which was not appropriate because Mother's presence violated her mother's public housing agreement. The maternal grandmother also struggled with substance abuse issues, so that it was detrimental to Mother's recovery to be in that environment. Mother obtained public housing but struggled to pay her utility bills. She claimed to periodically have a job but never provided any verification. Although the caseworker told Mother about the child's medical appointments, Mother never attended any. The agency

maintained concerns that Mother would not be able to care for A.R. given the child's particular needs because of Mother's lack of awareness regarding those issues.

{¶27} While Mother's interactions with A.R. were appropriate, Mother was inconsistent in visiting with the child. Of 68 scheduled visits, Mother failed to appear for 20, and arrived 10-15 minutes late for another 13. Even after the agency required Mother to call to confirm her visits, Mother missed visits she had confirmed.

{¶28} CSB offered visitation with the child to maternal family members once a month at the Family Interaction Center, but Mother's family attended only one visit. During the entire year of 2019, Aunt visited with A.R. only once and did not express any interest in placement or custody. CSB filed its motion for permanent custody in December 2019. The first day of the hearing was on August 27, 2020. Aunt did not contact CSB until September 2020, to request that the agency consider her as a potential legal custodian. It began to do so immediately. Aunt was quickly approved for visitation and was allowed to visit with the child in her home, at first for four hours at a time, and later for full days. At the conclusion of the second day of hearing on October 26, 2020, the juvenile court continued the hearing until December 14, 2020, on Mother's request to give CSB and the guardian ad litem additional time to assess Aunt's ability to care for the child.

{¶29} Although CSB allowed Aunt to pick up the child once a week for full day (9:30 a.m. to 5 p.m.) in-home visits, it had been several weeks since Aunt appeared on time to retrieve the child. Pursuant to agency policy, visits are cancelled when the visitor is more than 15 minutes late. The guardian ad litem was unable to observe a visit in Aunt's home to gauge the interactions between A.R., Aunt, and Aunt's sons because Aunt failed to pick up the child on time. The guardian ad litem and caseworker had hoped to increase Aunt's visits with the child to include

overnights, but they were unable to do so based on Aunt's inconsistency in arriving to pick up A.R.

{¶30} There were additional concerns regarding Aunt's ability to provide a safe and stable home for the child. The guardian ad litem observed a lot of clutter in Aunt's home, even during announced and scheduled visits. The walls of the home were covered with crayon where Aunt's children had scribbled while she was not supervising them. The guardian ad litem opined that the addition of another child in Aunt's home would exacerbate the already "fairly chaotic environment." Given A.R.'s tendency to tantrums and need for consistent one-on-one interactions, the guardian ad litem was concerned that Aunt would be unable to provide the necessary structure and stimulation for the child. She opined that it would be difficult for Aunt to address A.R.'s escalating behaviors while needing to also focus on her own two young children.

{¶31} While Aunt's home was generally appropriate, the child would have to share a bedroom with Aunt. The child's bed had not been constructed due to some missing parts. Although Aunt had a portable play pen for the child, A.R. had difficulty sleeping in something other than a bed. Aunt also admitted that she would have to buy additional furniture and clothing for the child.

{¶32} Of greater concern to both the caseworker and guardian ad litem was the unknown status of M.Y., the father of Aunt's children. M.Y. had a criminal history, including an active warrant and pending drug charges at the time of the hearing. Although Aunt reported knowing M.Y. for eight years, she denied any knowledge of his criminal history. At another time, however, she testified regarding marijuana found by the police in M.Y.'s car but asserted that he was only charged in that incident because he was the driver. In addition, while Aunt knew there were also

open child welfare cases involving M.Y.'s other children, she attributed those cases to the drug issues of the mother(s) of those children.

**{¶33}** In any event, Aunt denied that she and M.Y. were currently in a relationship. Although they co-parent their children, Aunt testified that their romantic relationship ended in January 2020. Both the caseworker and guardian ad litem spoke with Aunt, however, about recent social media posts wherein she refers to M.Y. as her fiancé. Given A.R.'s potential exposure to drugs if M.Y. were a fixture in Aunt's home, the caseworker and guardian ad litem had concerns about Aunt's ability to prioritize the child over her relationship and keep her safe.

**{¶34}** None of the Section 2151.414(E)(7)-(11) are applicable in this case as to either parent.

**{¶35}** Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and committed a manifest miscarriage of justice by terminating the parents' parental rights and awarding permanent custody to CSB. Father was in prison and not available for several years to care for the child. Mother had not addressed her mental health and substance abuse issues. She had very inconsistent visitation with A.R. Moreover, she had no stable home where she could raise the child. Under these circumstances, the juvenile court's finding that it was in the child's best interest to terminate parental rights and award permanent custody to CSB was supported by clear and convincing evidence. As such, an award of legal custody to Aunt was not in the child's best interest. *See In re S.P.* at ¶ 10. Accordingly, the judgment is not against the manifest weight of the evidence. Mother's second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

MOTHER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HER TRIAL ATTORNEY DID NOT PROPERLY ASSERT/RE-ASSERT THE NEED FOR A CONTINUANCE; DID NOT ADEQUATELY PREPARE FOR TRIAL; AND DID NOT OBJECT TO LEADING QUESTIONS, NOR SUBMIT ANY PROPOSED FINDINGS OF FACT OR CONCLUSIONS OF LAW.

**{¶36}** Mother argues that her trial attorney failed to provide her with effective assistance of counsel. The test for ineffective assistance of counsel in permanent custody cases is the same as that applicable to criminal cases. *In re C.M.*, 9th Dist. Summit Nos. 23606, 23608, and 23629, 2007-Ohio-3999, ¶ 27. The two-part test requires a demonstration of deficient performance by the attorney and resulting prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To determine whether counsel's performance was deficient, this Court must apply an objective standard of reasonableness. *Strickland* at 687-688. As Mother recognizes, there must have been a "substantial violation of * * * counsel's essential duties" to the client. *Bradley* at 141, quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976). To establish prejudice, the appellant must prove that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Strickland* at 694. Because proof of both parts of the test is necessary to establish ineffective assistance of counsel, this Court may dispose of the claim based solely on the appellant's failure to demonstrate either deficient performance or the requisite prejudice. *Bradley* at 142-143.

**{¶37}** Mother argues that her counsel was deficient for failing to (1) properly assert and re-assert the need for a continuance of the permanent custody hearing, (2) adequately prepare for the hearing, (3) object to leading questions, and (4) submit proposed findings of fact and conclusions of law to the juvenile court. We consider each challenge in turn.

{¶38} Mother fired her court appointed counsel and hired new trial counsel the evening before the commencement of the permanent custody hearing. Even though Mother and counsel did not first discuss her case until after 4:00 p.m. on the eve of the hearing, counsel prepared and electronically filed a motion to continue the hearing that evening. The following day, at the commencement of the proceedings, Mother's counsel orally argued in favor of a continuance to give him more time to prepare. Mother placed counsel in the position where he would have to participate in a hearing with no opportunity to prepare unless the juvenile court granted a last minute continuance.

{¶39} The juvenile court denied counsel's motion to continue based on inconvenience to the other parties, attorneys, and witnesses; the additional time the child would have to remain in custodial limbo; and concerns that Mother's last minute change of counsel could be a dilatory tactic. Nevertheless, after CSB's presentation of some witnesses' testimony, Mother's counsel renewed his motion to continue and the juvenile court in fact reconsidered its prior denial and continued the hearing for, not one, but two additional days over the course of almost four months. Accordingly, not only did Mother's counsel properly move for a continuance, but the court granted his motion. This Court cannot say that counsel was deficient when he moved for and obtained the requested accommodation.

{¶40} Mother's counsel not only filed a motion for a continuance, but also prepared and filed four dispositional motions on Mother's behalf prior to the commencement of the permanent custody hearing. He filed motions for legal custody to the maternal grandmother and two maternal aunts, and a motion for a six-month extension of temporary custody. He requested and was granted a recess to obtain and review copies of CSB's exhibits it planned to present at the hearing. After reviewing the exhibits, counsel was able to effectively cross-examine the two records custodians

who testified on behalf of the agency. Mother's counsel also cross-examined the foster mother. After CSB presented the direct examination testimony of the agency caseworker, the court continued the hearing for two months to allow Mother's counsel the opportunity to prepare to cross-examine that witness.

{¶41} On the second day of the hearing, Mother's counsel thoughtfully cross-examined the caseworker on relevant issues raised during direct examination. He also elicited testimony relative to Aunt's interest in obtaining legal custody and her appropriate interactions with A.R. In addition, Mother's counsel presented a case-in-chief on behalf of Mother, calling Aunt as a witness. When Mother's counsel rested Mother's case, he requested another continuance of the hearing prior to the presentation of the testimony of the guardian ad litem to allow for further assessment of Aunt as a potential legal custodian for the child. The juvenile court granted that second continuance and scheduled the final day of hearing for almost two months later. By strategically requesting continuances, thoughtfully cross-examining CSB's witnesses and the guardian ad litem, and presenting a case-in-chief on behalf of Mother, counsel demonstrated his competence in his representation of Mother in this case. Accordingly, this Court cannot conclude that counsel's trial preparation was deficient.

{¶42} Mother argues that counsel was deficient for failing to object to leading questions by the assistant prosecutor. Mother cites to one question in the transcript in support of her argument. The question involved Aunt's relationship with the maternal grandmother, including whether Aunt allowed the maternal grandmother to babysit Aunt's children despite concerns regarding the grandmother's substance abuse. It is well settled that "debatable trial tactics will not constitute ineffective assistance of counsel." *State v. Griffin*, 9th Dist. Summit No. 28829, 2019-Ohio-37, ¶ 11, citing *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980). Moreover, "as a matter of law,

the failure to object at trial may be justified as a trial tactic and thus does not sustain a claim of effective assistance of counsel." *Griffin* at ¶ 16, citing *State v. Miller*, 9th Dist. Summit No. 23240, 2007-Ohio-370, ¶ 10. This Court accords the proper deference and will not second-guess the strategic trial decisions of trial counsel in this regard. *Griffin* at ¶ 16; *see also State v. Carter*, 72 Ohio St.3d 545, 558 (1995).

{¶43} Here, Mother makes no argument as to why counsel's failure to object in this instance was deficient, and we will not second-guess counsel's decision. Moreover, Mother fails to cite to anywhere else in the record where she believes counsel should have objected. Pursuant to Ohio Rule of Appellate Procedure 12(A)(2), which allows the appellate court to disregard an assigned error if the appellant has failed to identify the alleged error in the record, we decline to address the issue further.

{¶44} Finally, although Mother references counsel's failure to submit proposed findings of fact and conclusions of law to the juvenile court in her assignment of error, she does not address the issue in her argument. Accordingly, we decline to consider the argument. *See* App.R. 12(A)(2); App.R. 16(A)(7).

{¶45} For the above reasons, this Court cannot conclude that Mother's counsel rendered ineffective assistance. In fact, despite Mother's hiring of counsel on the evening before the hearing, counsel performed competently. Accordingly, Mother's third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

THE COURT[']S ADOPTION OF UNSIGNED FINDINGS OF FACT AND CONCLUSIONS OF LAW IS REVERSIBLE PLAIN ERROR.

{¶46} Mother argues that the juvenile court erred by adopting CSB's unsigned findings of fact and conclusions of law as the judgment of the court. Mother's argument is not well taken.

{¶47} The juvenile court judge allowed all parties to submit proposed findings of fact and conclusions of law after the conclusion of the permanent custody hearing, should they wish to do so. On December 18, 2020, CSB filed its proposed findings of fact and conclusions of law. The record demonstrates that that document was signed by the assistant prosecuting attorney assigned to the case. On January 8, 2021, the juvenile court issued its independent judgment, incorporating the court's findings of fact, conclusions of law, and orders, which was signed by the juvenile court judge. This Court finds no error in these proceedings. Mother's fourth assignment of error is overruled.

## III.

{¶48} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CALLAHAN, J.
SUTTON, J.
CONCUR.

APPEARANCES:

HEATHER DYER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

HOLLY FARAH, Guardian ad Litem.