[Cite as *In re A.M.*, 2022-Ohio-2230.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: A.M.

C.A. No.     30215

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN19-11-000967

DECISION AND JOURNAL ENTRY

Dated: June 29, 2022

CARR, Presiding Judge.

{¶1}     Appellant, L.M. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}     Mother is the biological mother of A.M., born November 18, 2019. Mother was involved in juvenile court cases with two older children, but those children are not parties to this appeal. The father of A.M. did not appeal the trial court's judgment.

{¶3}     Mother has a long history with CSB. On January 7, 2002, CSB filed a complaint to remove Mother's then-infant child, L.M., from her custody because Mother had left the child with a relative who was no longer able to care for the child and Mother's whereabouts were unknown. L.M. was later adjudicated a neglected and dependent child and placed in the temporary

custody of CSB. Among other things, the case plan in that case required Mother to complete mental health and substance abuse assessments and follow all recommendations.

{¶4} Mother did not comply with the reunification requirements of the 2002 case plan, however, and CSB later moved for permanent custody of L.M. Following an evidentiary hearing, the trial court terminated Mother's parental rights and placed L.M. in the permanent custody of CSB. The decision terminating Mother's parental rights focused on Mother's failure to comply with the mental health and substance abuse components of the case plan and her failure to secure safe and stable housing.

{¶5} On August 22, 2011, CSB filed a complaint, alleging that Mother's then three-year-old child, also with the initials L.M., was a neglected a dependent child. The complaint alleged concerns about Mother's homelessness, the prior termination of her parental rights, and her ongoing problems with substance abuse and untreated mental health problems. That child was later adjudicated neglected and dependent and placed in the temporary custody of CSB.

{¶6} On June 18, 2012, CSB moved for permanent custody of the younger L.M. Following an evidentiary hearing, Mother's parental rights were involuntarily terminated, and that child was placed in the permanent custody of CSB. The trial court found several first prong grounds for permanent custody, including that Mother had failed to remedy the conditions that caused her child to be placed outside her care and that she had involuntarily lost custody of her older child for those same reasons.

{¶7} When the child at issue in this case, A.M., was born more than seven years later, Mother continued to struggle with the same problems. On November 22, 2019, CSB filed a complaint, alleging that newborn A.M. was an abused, neglected, and dependent child because of Mother's long history of untreated mental health and substance abuse problems, which had led to

the involuntary termination of her parental rights to two other children. Based on an agreement of the parties, A.M. was later adjudicated a neglected and dependent child and was placed in the temporary custody of CSB.

{¶8} As in the dependency and neglect cases involving Mother's older children, the case plan in this case required Mother to complete substance abuse and mental health assessments and follow all recommendations; secure and maintain safe and stable income and housing; and demonstrate that she could provide for her child's basic needs. A.M. has unique medical needs, including significant gross motor skill delays that require regular physical therapy, and vision problems that had required surgery and other ongoing medical care. Mother was also required to demonstrate that she understood those needs and would assure that A.M. received the ongoing medical treatment that he required.

{¶9} Mother engaged in some case plan services but never completed a drug treatment program, nor did she consistently engage in mental health services. Moreover, Mother continued to test positive for drugs throughout this case. Mother visited A.M. consistently but she attended fewer than a third of his medical appointments and tended to downplay the significance of his need for ongoing medical care.

{¶10} CSB eventually moved for permanent custody of A.M. Following an evidentiary hearing, the trial court terminated Mother's parental rights and placed A.M. in the permanent custody of CSB. Mother appeals and raises three assignments of error, which this Court will consolidate to facilitate review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED PLAIN ERROR IN TERMINATING [MOTHER'S] PARENTAL RIGHTS BASED ON R.C. 2151[.414](B)(1)(a) WHEN THE CHILD WAS NEVER PLACED OUT OF STATE.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN FINDING THAT A.M. CANNOT OR SHOULD NOT BE PLACED WITH [MOTHER] BASED ON HER ALLEGED SUBSTANCE USE AND MENTAL HEALTH CONDITIONS, WITHOUT A FINDING OF FACT, OR ANY EVIDENCE, THAT EITHER HAD NEGATIVELY AFFECTED THE CHILD OR WOULD DO SO IN THE FUTURE.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT'S TERMINATION OF [MOTHER'S] PARENTAL RIGHTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶11}** Through her three assignments of error, Mother challenges the trial court's permanent custody decision. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*,

18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶12}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

**{¶13}** In this case, the trial court found that Mother's parental rights should be terminated for numerous reasons under the first prong of the permanent custody test. Mother's first two assignments of error challenge only two of those findings, but not the trial court's alternative finding under R.C. 2151.414(E)(11), involving the 2003 and 2012 involuntary terminations of Mother's parental rights to two older children. Because only one finding was necessary to support the first prong of the permanent custody test, any error in the alternative findings would be harmless. *In re K.C.*, 9th Dist. Summit Nos. 29898 and 29899, 2021-Ohio-2489, ¶ 10, citing *In re R.B.-B.*, 9th Dist. Summit Nos. 29817 and 29832, 2021-Ohio-818, ¶ 10 and *In re T.B.*, 9th Dist. Summit Nos. 29560 and 29564, 2020-Ohio-4040, ¶ 12.

**{¶14}** For ease of discussion, this Court will confine its review to whether the trial court properly found that the first prong of the permanent custody test was satisfied for the reasons set forth in R.C. 2151.414(E)(11). R.C. 2151.414(E)(11) requires the trial court to find that the child cannot or should not be returned to either parent if it determines that clear and convincing evidence demonstrates:

The parent has had parental rights involuntarily terminated with respect to a sibling of the child * * * and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶15} CSB presented evidence about the juvenile cases involving Mother's two older children. The child in each case was removed from Mother's custody because of the instability in Mother's life, including her untreated mental health and substance abuse problems. During each of those cases, Mother failed to consistently work on the case plan to control her mental health or substance abuse problems and her parental rights were ultimately terminated as to each child.

{¶16} When this case began several years later, Mother continued to struggle with the same problems. As in the dependency and neglect cases involving Mother's older children, the case plan in this case required Mother to complete substance abuse and mental health assessments and follow all recommendations; secure and maintain safe and stable income and housing; and demonstrate that she could provide for her child's basic needs.

{¶17} Mother obtained substance abuse and mental health assessments and engaged in counseling off and on during this case. Mother did not engage in psychiatric treatment for her mental health problems because she did not believe that she needed psychiatric medication. Mother admitted, however, that she used cocaine, instead of prescribed psychiatric medication, to deal with her stress. Mother was terminated from two different drug treatment programs for her failure to regularly attend scheduled appointments and she repeatedly relapsed and tested positive for cocaine, alcohol, and other drugs during this case. Mother scheduled to reengage in one of the programs, but she missed those appointments and did not reengage in services.

{¶18} While Mother was still engaged in group drug treatment, her drug counselor informed CSB and Mother that Mother needed to engage in intensive outpatient treatment.

Although Mother seemed receptive to engage in that higher level of care, she never did. Moreover, at the permanent custody hearing, Mother testified that she did not think she needed intensive outpatient treatment. Mother further testified that the loss of her child had caused her to use drugs and that she would stop using drugs if and when A.M. was returned to her care.

{¶19} The evidence before the trial court demonstrated that Mother had not resolved any of the same problems that caused her to lose custody of her two older children. Consequently, the trial court did not err in finding that A.M. could not or should not be returned to Mother's custody based on the grounds set forth in R.C. 2151.414(E)(11).

{¶20} Next, the trial court determined that permanent custody was in the best interest of A.M. The trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶21} Because Mother failed to comply with the substance abuse and mental health components of the case plan, her interaction with A.M. throughout his life had been limited primarily to supervised visits at the family interaction center. Mother visited A.M. consistently and generally interacted well with him. Her visits briefly progressed to expanded visits away from the visitation center because she submitted several negative drugs screens. After Mother again repeatedly tested positive for cocaine, however, her visits were returned to the visitation center, where she and A.M. were closely supervised throughout the remainder of this case.

{¶22} Because A.M. was only two years old at the time of the hearing, the guardian ad litem spoke on his behalf. The guardian ad litem opined that permanent custody was in the best interest of A.M. She recognized that Mother loved A.M. but expressed serious concern about Mother's long-term mental health and drug problems and her failure to sustain sobriety even for a brief period during this case.

{¶23} A.M.'s most recent foster parents had adopted one of his older half-siblings and A.M. had developed a close bond with the sibling while living in that home. A.M.'s custodial history had been spent living in CSB temporary custody in foster care for his entire two-year life. He needed a legally secure permanent placement and neither parent was prepared to provide him with a stable home. Although Mother was seeking legal custody of A.M., she continued to struggle with mental health and substance abuse problems. Moreover, she was living with a man who had not been approved by CSB and, in fact, had an extensive criminal history. CSB had also been unable to locate any relatives who were willing and able to provide a suitable home for A.M.

{¶24} Finally, the trial court was required to again consider under its best interest determination that Mother had her parental rights to two older siblings involuntarily terminated and she failed to present clear and convincing evidence that, notwithstanding those prior terminations, she could provide A.M. with "a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." R.C. 2151.414(E)(11). As was explained above, Mother had taken only minimal steps toward addressing the same parenting problems that had prevented her from providing a suitable home for her children for nearly 20 years. Mother blamed her drug problems on the loss of her child, but apparently failed to recognize that it was her own drug problems and other parenting problems that had caused her to lose custody of A.M. and two other children. There was no evidence before the trial court that Mother had made any

progress in resolving the parenting problems that caused her to lose custody of her two older children.

**{¶25}** Given the evidence before the trial court, the trial court did not lose its way in terminating Mother's parental rights and placing A.M. in the permanent custody of CSB. Mother's assignments of error are overruled.

III.

**{¶26}** Mother's three assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

CALLAHAN. J.
SUTTON, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

DAVID BELFIGLIO, Attorney at Law, for Appellant.

JOHN ALEXANDER, Attorney at Law, for Appellee.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

KANDEE ROBINSON, Guardian ad Litem.