[Cite as *In re K.G.*, 2024-Ohio-2432.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: K.G.

C.A. No.     31019

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 23 04 0289

DECISION AND JOURNAL ENTRY

Dated: June 26, 2024

SUTTON, Judge.

{¶1}    Appellant, D.G. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed his minor child in in the permanent custody of Summit County Children Services Board ("CSB").  This Court affirms.

I.

{¶2}    Father is the biological father of K.G., born December 23, 2022.  Father is married to the child's mother ("Mother), but her whereabouts were unknown at the time of the permanent custody hearing, and she did not appeal the trial court's judgment.

{¶3}    Father and Mother each have history of involvement with CSB and the Summit County Juvenile Court regarding their biological children with prior partners.  Father's older child, J.G., was removed from her parents' custody in two separate juvenile cases.  After Father and the child's mother failed to resolve their history of domestic violence and other criminal involvement, Father's parental rights to J.G. were involuntarily terminated on July 8, 2008.

**{¶4}** During 2010, Mother had three children removed from her custody because of her abuse of cocaine and heroin and her failure to meet the children's basic needs. Mother did not resolve her drug problems and the juvenile court eventually placed those three children in the legal custody of a paternal relative.

**{¶5}** During February 2021, the juvenile court removed the older children of Father and Mother, B.G. and A.M., from their custody and later adjudicated them dependent primarily because of the parents' substance abuse and ongoing domestic violence in their relationship. The case plan required both parents to resolve their problems with substance abuse, untreated mental health diagnoses, domestic violence, and other instability in their lives. The parents did not engage in case plan services or resolve those problems by the time K.G. was born, nearly two years later.

**{¶6}** During the cases of B.G. and A.M., Mother was in and out of court-ordered medically assisted drug treatment pertaining to several pending criminal drug charges through the Summit County Court of Common Pleas. Mother did not successfully complete any of those programs. By the time K.G. was born, however, Mother was engaged in another court-ordered, medically assisted drug treatment program at Touchstone. When K.G. was born, the child exhibited some symptoms of drug withdrawal, which was apparently caused by Mother's medically assisted drug treatment. After the child's release from the hospital, Mother was living in a highly supervised residential treatment facility, so CSB initially permitted K.G. to remain in Mother's custody.

**{¶7}** On February 2, 2023, because Touchstone staff had reported concerns that Mother was not appropriately caring for K.G., CSB filed a complaint and K.G. was removed from Mother's custody. K.G. remained in CSB's emergency temporary custody, but CSB later dismissed its complaint because of procedural time constraints.

{¶8} CSB refiled a complaint in April 2023, alleging that K.G. was a dependent child. The allegations focused on both parents' lengthy history of drug abuse, domestic violence, undiagnosed mental health issues, criminal problems, and their failure to resolve those problems during two years of case planning services in the pending juvenile cases of B.G. and A.M. On May 25, 2023, in the separate juvenile cases of B.G. and A.M., the juvenile court involuntarily terminated both parents' rights to those children.

{¶9} Pursuant to R.C. 2151.419(A)(2)(e), the trial court in this case was then authorized to issue a reasonable efforts bypass order, to excuse the agency from making reasonable reunification efforts because "[t]he parent from whom the child was removed has had parental rights involuntarily terminated with respect to a sibling of the child[.]" Consequently, CSB moved the trial court to issue a reasonable efforts bypass order in this case. The trial court later adjudicated K.G. as a dependent child, placed her in the temporary custody of CSB, and adopted the case plan as an order of the court. In the same dispositional order, however, the trial court explicitly granted CSB's motion for a reasonable efforts bypass, so CSB was excused from making reasonable efforts to reunify the parents with K.G. Moreover, because the trial court granted a reasonable efforts bypass, and under the facts of this case, R.C. 2151.413(D)(2) required CSB to move for permanent custody of the child because it did not have "a compelling reason that permanent custody [was] not in the best interest of the child." R.C. 2151.413(D)(3)(a) (the only potential exception to the requirement that CSB move for permanent custody in this case, given the reasonable efforts bypass order).

{¶10} On August 9, 2023, CSB moved for permanent custody of K.G. The date originally set for the hearing was continued because Father was serving a six-month term of incarceration on a federal weapons conviction. Father was later released from prison and the hearing was held

approximately six weeks later. Following the hearing, the trial court terminated parental rights and placed K.G. in the permanent custody of CSB. Father appeals and raises two assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN AND REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] AS THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶11} Father's first assignment of error is that the trial court's permanent custody decision was not supported by the evidence presented at the hearing. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).

{¶12} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.)

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶13} On the first prong of the permanent custody test, the trial court found that the children could not or should not be returned to Father's custody because Father previously had his parental rights involuntarily terminated as to three older siblings of K.G. and Father failed to prove, by clear and convincing evidence that, "notwithstanding [those] prior termination[s], the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." R.C. 2151.414(B)(1)(a); R.C. 2151.414(E)(11).

{¶14} At the permanent custody hearing, CSB supported its allegations under R.C. 2151.414(E)(11) with certified permanent custody judgments from the juvenile cases involving the parents' two older children, B.G. and A.M., as well as the juvenile case involving Father's older child, J.G. Father does not dispute that CSB established, by clear and convincing evidence, that his parental rights to three siblings of K.G. had been involuntarily terminated by the juvenile court. *See* R.C. 2151.414(E)(11).

{¶15} Instead, Father asserts that he rebutted the presumption of his parental unfitness under R.C. 2151.414(E)(11). "[T]his Court has consistently interpreted this provision to require a parent to present clear and convincing evidence of his or her current ability, at the time of the hearing, to provide an appropriate home for the child." *In re M.J.*, 9th Dist. Summit No. 30907, 2024-Ohio-1261, ¶ 17. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. Although Father testified about how his life was more stable at the time of the hearing than it was when he lost his parental rights

to J.G., B.G., and A.M., the trial court concluded that he had failed to present "clear and convincing evidence" that, despite the prior terminations of his parental rights in July 2008 and May 2023, he was then able to provide K.G. with a safe and stable permanent home and "adequate care for the health, welfare, and safety of the child." *See* R.C. 2151.414(E)(11).

**{¶16}** At the hearing, Father offered only his own testimony that he was sober, employed, had stable housing, was complying with the terms of his probation, and had received no additional criminal charges. He presented no evidence to corroborate his testimony, however, such as the results of drug tests or the testimony of his probation officer or any other witness. Moreover, to determine the persuasiveness of Father's testimony, this Court must consider it within the context of the surrounding circumstances and other evidence admitted at the hearing.

**{¶17}** Even if the facts stated in Father's testimony were entirely true, his testimony demonstrated only that he was sober and had stable housing and income at the time of the hearing, only six weeks after he was released from prison. Father did not testify or present any evidence that he could sustain that apparent level of stability for the next 17 years, which would be required to provide a stable permanent home for his one-year-old child. Moreover, the record included ample evidence that undermined any reasonable conclusion that Father would be able to do so.

**{¶18}** Before this case began, Father lost custody of three other children because of more than fifteen years of instability and parenting problems, including undiagnosed mental health issues, domestic violence and other criminal involvement, substance abuse, and a lack of stable income. Given that extensive history, and Father's failure to engage in treatment to address any of those problems, six weeks of apparent stability did not clearly and convincingly demonstrate that Father could safely meet the ongoing needs of a one-year-old child to provide her with a safe and stable permanent home.

{¶19} Father's trial counsel emphasized that Father had not been criminally charged with domestic violence or a crime of violence in over 10 years. Father's defense in this case apparently relied on that fact, standing alone, to prove that he had resolved his long-standing problem with domestic violence and an inability to control his anger. A lack of criminal charges did not demonstrate that Father had resolved that problem for 10 years, however.

{¶20} B.G. and A.M. were adjudicated dependent in 2021, in part, because of their exposure to domestic violence between Father and Mother, which had included Father's act of threatening Mother with a loaded firearm in front of the children. Although no criminal charges were filed against Father at that time, Father's violent conduct explicitly formed the basis of the adjudications of B.G. and A.M., which CSB was required to prove by clear and convincing evidence. *See* R.C. 2151.35(A)(1). As part of the court-ordered case plan in that case and this case, Father was required to engage in domestic violence treatment, which he never did.

{¶21} CSB also presented evidence at the hearing that Father was convicted and later incarcerated because of his 2021 possession of a firearm and ammunition while he was under the disability of several felony convictions. According to the affidavit attached to the criminal complaint, a sheriff's deputy stopped Father's vehicle in response to allegations that he had been involved in criminal activity and/or had been in an altercation with another person who shot his vehicle. Father was not charged for engaging in an altercation with another person, but a firearm and ammunition were found in the vehicle and Father was later convicted of having a firearm and ammunition while he was legally prohibited from owning or possessing either. As a result of that conviction, Father was incarcerated throughout the majority of K.G.'s case, including more than three months after CSB moved for permanent custody of the child.

**{¶22}** Furthermore, at the time of the hearing, Father was married to Mother, who continued to suffer from serious, unresolved drug problems, and with whom he had a violent relationship. During this case, Mother was indicted on four additional felony drug possession charges. At the time of the hearing, Mother's whereabouts were unknown, and she had several warrants out for her arrest. Most recently, Mother had absconded from a drug treatment program that had been ordered in one of her criminal cases.

**{¶23}** Father testified that he worried about Mother and that he believed that K.G. should be raised by both Mother and him. Father stated that, "[a]s of right now[,]" he did not believe that he and Mother would be together in the future, but he did not clarify that statement. Notably, Father did not testify that his relationship with Mother was definitely over, that he planned to divorce her, or that he would not welcome her into his home if she reappeared. The possibility that Mother would return to Father's life posed a serious risk to the safety and wellbeing of K.G. because Mother had a lengthy history of unresolved substance abuse and domestic violence in her relationship with Father. Her mere association with Father would threaten his own sobriety.

**{¶24}** Considering all the evidence presented at the hearing, Father has failed to demonstrate that the trial court lost its way by concluding that he did not present clear and convincing evidence that, despite the prior terminations of his parental rights to three older siblings of K.G., he was prepared at the time of the hearing to provide a suitable permanent home and provide for the safety and wellbeing of K.G. Consequently, the trial court did not err in finding that CSB had established the first prong of the permanent custody test.

**{¶25}** Next, the trial court was required to find that permanent custody was in the best interest of the child. When reviewing the trial court's best interest determination, this Court focuses primarily on the specific factors set forth in R.C. 2151.414(D). *In re M.S.*, 9th Dist.

Summit Nos. 30506 and 30515, 2023-Ohio-1558, ¶ 25. In making its best interest determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, her wishes, the custodial history of the child, her need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. As explained above, the trial court found that R.C. 2151.414(E)(11) applied to the facts of this case and it was required to consider the three prior involuntary terminations of Father's parental rights again in its best interest determination.

{¶26} Father's interaction with K.G. consisted of only a few supervised visits during the first several months of her life because Father did not take advantage of all his opportunities to spend time with his young child. Father was at the hospital when K.G. was born, but he was not permitted to visit the child while she lived with Mother in the residential treatment facility. Father had the opportunity to visit K.G. two times a week for several months before he was incarcerated, but he attended only a few visits. CSB scheduled weekly supervised visits at the family interaction center for Father and the caregiver family permitted him to see K.G. on Sundays when the family attended church services. Shortly after this case began, Father stopped visiting the child at church. He stopped attending visits at the family interaction center more than two months before he was incarcerated.

{¶27} Father did not see K.G. at all during his six months of incarceration. After Father was released from prison, he visited K.G. approximately 6 times. In addition to weekly visits at the CSB visitation center, Father saw K.G. once at a church service on the Sunday before the permanent custody hearing. By the time of the hearing, K.G. was just over one year old and Father

had seen her only a few times when she was an infant and approximately six times shortly before the hearing. Because of Father's limited contact with the child, they had not developed a close bond.

{¶28} Throughout this case, K.G. was placed in the home of a kinship family. Mother and Father knew the family from church and had recommended them as a placement for K.G. K.G. had become closely bonded to the kinship caregivers, who were meeting all her needs.

{¶29} Because of K.G.'s young age, the guardian ad litem spoke on her behalf. The guardian ad litem had been working with this family since B.G. and A.M. were removed from the parents' custody nearly three years earlier. She opined that permanent custody was in the child's best interest. She expressed disappointment that Father had not made the effort to attend all available visits with K.G. before and after his incarceration. She also expressed concern for the safety of the child because of Father's extensive history of parenting problems and his failure to engage in any case plan services for the past three years.

{¶30} K.G. had spent her entire life in a temporary placement and needed a stable, permanent home. The parents had not rebutted the presumption under R.C. 2151.414(E)(11) of their inability to provide the child with a suitable permanent home and CSB had found no suitable relatives who were willing to take legal custody of the child. The current kinship caregivers had informed CSB that they were interested in adopting K.G., but they were not willing to take legal custody. The trial court reasonably concluded that a legally secure permanent placement would be achieved by terminating parental rights and placing K.G. in the permanent custody of CSB.

{¶31} Finally, the trial court was required to again consider that Father's parental rights were involuntarily terminated as to three older siblings of K.G. and he failed to present clear and convincing evidence that, despite those prior terminations, he was prepared to provide K.G. with

a suitable permanent home. Given Father's extensive criminal history and long-term problems with drug abuse and domestic violence, his lack of treatment to resolve those problems, and his failure to demonstrate a sustained period of stability in his life, the trial court reasonably concluded that he was not prepared to provide K.G. with a suitable permanent home.

{¶32} Father has failed to demonstrate that the trial court lost its way by terminating his parental rights and placing K.G. in the permanent custody of CSB. *See Eastley* at ¶ 20. Father's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED [ITS] DISCRETION WHEN IT DENIED FATHER'S MOTION FOR A FIRST SIX-MONTH EXTENSION.

{¶33} Father's second assignment of error is that the trial court erred by placing the child in CSB's permanent custody instead of continuing the child in the agency's temporary custody. In their appellate briefs, both parties discuss the requirements for a first six-month extension of temporary custody under R.C. 2151.415(D)(1), but that provision was not applicable here. As the parties discussed with the trial judge at the hearing, this case had not yet reached the one-year sunset date, so the original order of temporary custody had not expired. *See* R.C. 2151.353(G). If the trial court had denied the motion for permanent custody, K.G. would have continued in CSB's temporary custody by operation of law for almost three more months because the original temporary custody order did not expire until that time, one year after the complaint was filed. *See id*.

{¶34} Moreover, Father requested a continuation of temporary custody so that he would have more time to work on the reunification requirements of the case plan. CSB was granted a reasonable efforts bypass in this case, however, and was not required to work with Father to reunify

with this child. *See* R.C. 2151.419(A)(2)(e). In fact, the agency's obligation after the bypass was granted was to achieve permanency for the child. *See* R.C. 2151.413(D)(2), (3).

{¶35} Furthermore, "[t]his Court has repeatedly held that, if permanent custody to CSB was in the child's best interest, an alternative disposition necessarily was not." *In re G.W.*, 9th Dist. Summit No. 29966, 2021-Ohio-3430, ¶ 15. This Court overruled Father's first assignment of error, finding no error in the trial court's determination that permanent custody was in the child's best interest. Consequently, the trial court did not err by denying Father's request to continue the child in the temporary custody of CSB. Father's second assignment of error is overruled.

### III.

{¶36} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.